UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARJORIE MURPHY,
           Plaintiff,

   v.                                               C.A. No. 15-545-ML

AETNA INSURANCE COMPANY,
           Defendant.

## MEMORANDUM AND ORDER

    The plaintiff in this case, Marjorie Murphy ("Murphy"), challenges the termination of long term disability ("LTD") benefits under an employee benefit welfare plan. Both Murphy and the defendant, Aetna Insurance Company ("Aetna"), have filed cross-motions for summary judgment. The matter before the Court is Murphy's objection to the November 22, 2016 Report and Recommendation ("R&R"), in which Magistrate Judge Sullivan recommends that Murphy's motion be denied and Aetna's motion be granted (ECF No. 24). Murphy filed a timely objection to the R&R (ECF No. 25), to which Aetna filed a response (ECF No. 26). The Court has reviewed the R&R, the objection thereto, the parties' memoranda in support of their respective motions for summary judgment and those portions of the administrative record ("AR") on which the parties rely. Having done so, the Court adopts the R&R in its entirety.

1

## I. Summary of Facts[1]

Murphy was employed by FM Global as a Claim Technical Assistant from June 2000 until April 27, 2006, when she began a medical leave of absence due to acute liver failure related to alcoholic hepatitis. (PSUF ¶1, DSUF ¶¶1-3, Compl. ¶9).

As part of her employment, Murphy was eligible for long-term disability ("LTD") benefits under a group policy (the "Policy") administered by Aetna. (DSUF ¶¶ 9). The Policy contains the following provision:

> For the purposes of Section 503 of Title 1 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. This includes, but is not limited to, the denial of certification of the medical necessity of hospital or medical treatment. In exercising such fiduciary responsibility Aetna shall have discretionary authority to:
>
> > determine whether and to what extent employees and beneficiaries are entitled to benefits; and
> >
> > construe any disputed or doubtful terms of this policy.
>
> Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously. (DSUF ¶11, (Administrative Record, AR 00043).

Under the Policy, Murphy received LTD benefits for the first

---

[1] The facts are taken from the parties' respective statements of undisputed facts ("PSUF" and "DSUF") (ECF Nos. 15 and 17), to the extent they are not disputed. Relevant disagreements are noted.

two years after a "waiting period", because she was unable to work at her own job at FM Global. (DSUF ¶ 5, 6). Specifically, the Policy provision required that Murphy not be "able, solely because of injury or disease, to perform the material duties of [her] own occupation." (DSUF ¶12). After that two-year period, Murphy's eligibility for receiving LTD benefits depended on a determination that she was unable to work at "any reasonable occupation." (DSUF ¶¶7, 12). "Reasonable Occupation" was defined in the Policy as "any gainful activity for which you are, or may reasonably become, fitted by education, training, or experience. It does not include work under an Approved Rehabilitation Program."(DSF ¶10, AR 0003).

Although Murphy's liver disease stabilized after hospitalization and abstinence from alcohol, she still suffers from cirrhosis, renal insufficiency, pancreatitis, and liver disease. (DSUF ¶14). Nevertheless, Murphy did work part-time (15 hours per week) from October 1, 2008 to May 8, 2009, while she was collecting LTD benefits. (DSUF ¶15). During that time, Murphy's primary physician was internist Keith Callahan, M.D. ("Dr. Callahan"); while Raymond Mis, D.O. was her gastroenterologist ("Dr. Mis"). (DSUF ¶¶16, 17).

In October 2009, Murphy's application for Social Security Benefits was denied; she took no appeal in court. According to the Complaint, although Aetna notified Murphy at that time that her benefits would be terminated, she successfully appealed that

decision and her benefits were reinstated. Compl. ¶20.

The Administrative Record reflects that Murphy was regularly seen by Dr. Mis and that he reported his findings and conclusions to Dr. Callahan. DSUF ¶22. In a March 10, 2011 letter, Dr. Mis noted, *inter alia*, that Murphy's cirrhosis and renal insufficiency were "stable;" that she suffered from fatigue; and that she "remained quite active going swimming on a daily basis." DSUF ¶ 23, AR 000807-808. Subsequent letters by Dr. Mis reflect that Murphy, who had undergone surgery for a complete hip replacement in 2011, continued to complain of fatigue, but that she continued to swim daily and tried to get motivated to do aerobic exercise at the gym. DSUF ¶24, AR 815, 817.

According to a letter dated May 15, 2012, Murphy, whose chief complaint was fatigue at that time, remained "quiet active and has actually asked if she can return to work." Murphy also reported that she exercised almost six days a week; that she stayed quite active with her son and her pet; and that she was bored. DSUF ¶25, AR 00819. Further letters from Dr. Mis for the period from November 20, 2012 through December 3, 2013 state that Murphy continued to exercise; that she underwent shoulder replacement surgery; that she continued to complain of fatigue (although she apparently did not follow up with Dr. Callahan to address that issue); and that she became a foster mother. DSUF ¶¶28-33, AR 000821-831.

Murphy's case was reviewed by Aetna staff clinical consultant

Kimberly Harris, R.N. ("Nurse Harris") on January 25, 2013, after which she recommended that Aetna Senior LTD Claims Analyst Richard Collins ("Collins") obtain additional records from Dr. Mis to evaluate Murphy's functional capacity. DSUF ¶35, AR 00239-45). After receiving additional information from Dr. Mis, Nurse Harris noted that Dr. Mis opined that Murphy was unable to work but that "[m]edical information does not support that [Murphy] would be precluded from frequent sitting, occasionally standing/walking and lifting up to 10 lbs. And her activities appear to be beyond these activities." DSUF 38, AR 000264-67). The record also reflects that Harris attempted to call Dr. Mis's office twice and that, although Dr. Mis subsequently left a message that he would call back, he did not do so. DSUF ¶39-41, AR 000267-270.

A March 6, 2014 letter from Dr. Mis to Dr. Callahan notes that Murphy continues to complain of fatigue "to the point that she has not been able to work out as regularly as she has" and that, although she volunteers two days a week for only a couple of hours, she has to take a nap afterwards. DSUF ¶43, AR 00834-35. The letter also notes that Murphy's cirrhosis was "clinically stable;" her liver function tests were "within normal limits;" and her hemoglobin was normal. DSUF ¶44, AR 00835. Although Dr. Mis suspected that Murphy's reported fatigue was related to cirrhosis, renal insufficiency, and chronic arthritis pain, no changes were made to Murphy's treatment plan. DSUF ¶44, AR 00835.

5

On May 21, 2014, Collins sent a five-page fax to Dr. Mis, explaining that Aetna was reviewing Murphy's functionality "to establish and confirm if she is totally disabled from any and all gainful occupations and/or if she would be a good vocational rehabilitation candidate (job retraining)." DSUF 46, AR 00521-23, 00900-01. Collin's request further noted that Murphy had indicated that she attended a gym for exercising, did volunteer work, and acted as a foster parent, and that "[b]ased on this information, it appears that she does have capacity to do some type of work." AR 00900.

On the same day, Collins requested by letter to Murphy that she have Dr. Mis provide a response to Aetna's "narrative request regarding your functional capacity" for "continued review of your [LTD] claim." DSUF ¶45, AR 00524. In response to Collin's request, Dr. Mis returned the provided form and under "level of capacity she has on a full time basis," he checked the option for "S-Sedentary work." That category was further described as involving "sitting most of the time, but may involve walking or standing for brief periods of time," as well as exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects. DSUF ¶47, AR 00900. Dr. Mis noted that Murphy had "[n]o specific restrictions except for what she can tolerate" and that she suffered from "chronic fatigue and often needs to rest after periods of

6

activity." DSUF ¶47, AR 00901.

Murphy's file was then referred for a Transferable Skills analysis ("TSA"), evaluating, *inter alia*, Murphy's work experience, education and training, functional capacities/restrictions, and her transferable skills. DSUF ¶¶51-53 AR 0573. Based on that information, Senior Vocational Field Case Manager Donna Kisslinger Abram concluded that Murphy's background was compatible with four identified jobs in the open labor market at her reasonable wage level in the local market. AR 00575.

Aetna terminated Murphy's disability claim by letter dated July 2, 2014, based on the medical records provided by Dr. Mis and his advice regarding Murphy's current level of functional capacity and in consideration of the result of the TSA analysis. AR 00904. Aetna advised Murphy that if she wished to appeal the decision, Aetna would review additional materials, including a narrative report detailing her specific physical and/or mental limitations placed on her by her doctor, diagnostic studies, and any other information specific to her condition or that would assist in the review of her claim. DSUF ¶ 60, AR 00526.

Murphy appealed Aetna's decision to terminate her LTD benefits by letter dated July 14, 2014 (AR 00908-09), enclosing a July 3, 2014 letter from Dr. Mis (AR 00857), in which he opined that it "would be hard" for Murphy to "perform repetitive tasks and sustain [a] part-time or even full-time employment schedule." Although he

stated that Murphy "cannot sustain a steady work environment," he acknowledged that he had advised her "to exercise and try to volunteer some of her time to improve the quality of her life." DSUF ¶¶61-63, AR 000857. It is undisputed, and Aetna's internal reviewer Nurse Dunham noted, that neither Murphy nor Dr. Mis included "physical examination findings or diagnostic test results to substantiate a functional impairment." DSUF ¶64, AR 291. Nurse Dunham acknowledged that Murphy "may have some restrictions due to orthopedic conditions and past surgeries," but concluded that the provided information did not change Aetna's prior determination. DSUF ¶64, AR 00294.

An independent peer review of Murphy's records by Manoj K. Mehta, M.D. — which included a teleconference with Dr. Mis — resulted in the same conclusion: that Murphy was not "impaired" in order to qualify for LTD benefits. AR 00554-00557. Aetna next obtained a Functional Capacity Evaluation ("FCE"), which concluded that Murphy "demonstrated physical abilities at the SEDENTARY physical demand level." DSUF ¶69, AR 00581. The FCE report also noted that "due to consistent subjective reporting of increasing overall total body pain and fatigue, obtaining consistent objective information during the testing process was difficult."[2] Id.

---

[2] As noted in Murphy's objection to the DSUF, Aetna's FCE summary, as is in the nature of summaries, is not a complete version of the FCE report and in one instance, the report referred erroneously to Ms. Field, rather than Ms. Murphy. Murphy takes no specific objection to the remainder of the report. Pltf.'s Response

Subsequently, Aetna Senior Appeal Specialist Susan Dorman concluded that Murphy's disability claim was not supported, noting that "[t]here was a lack of medical evidence to support impairment from any reasonable (sedentary) occupation. File lack [sic] abnormal examination findings, or diagnostics to substantiate a specific functional deficit." DSUF ¶73, AR 00322.

By letter dated December 23, 2014, Aetna informed Murphy that after reviewing the information received, it was upholding its decision to terminate her LTD benefits, effective July 2, 2014. DSUF ¶74, AR 00544. Aetna's letter provides an explanation of what it means to be totally disabled under the Policy, as well as the definition of a "reasonable occupation." AR 000544. The letter further summarizes the medical information in Murphy's claim and appeal file, as well as the result of the FCE and the vocational assessment. AR 000544-46. Aetna concludes that "we find no medical evidence of any physical deficits or impairment" and notes that, based on its review, "we find that the original decision to terminate your LTD benefits was correct, and has been upheld on appeal." AR 000546.

## II. Procedural History

Murphy filed a complaint in this Court against Aetna on December 22, 2015 (ECF No. 1). The parties submitted cross-motions for summary judgment on August 15, 2016 (ECF Nos. 14, 16). After

---

to DSUF ¶71.

Magistrate Judge Sullivan issued an R&R on November 22, 2016 (ECF No. 24), Murphy filed an objection on December 9, 2016 (ECF No. 25), to which Aetna responded with a reply on December 22, 2016 (ECF No. 26).

Murphy raises four specific objections to the R&R. First, she suggests that Aetna's denial of the continuation of LTD benefits was "largely based upon a Functional Capacity Evaluation ('FCE') performed at the behest of Aetna." Pltf.'s Obj. at 3 (ECF No. 25). Further, Murphy argues that (1) the R&R "overlooked manifest deficiencies with that FCE that destroyed its evidentiary value," and (2) the R&R failed to apply established case law requiring the reviewer to examine the record as a whole and to refrain from mischaracterizing the record. Id. Finally, Murphy maintains that she was denied the opportunity for a full and fair review at the internal administrative level "in that Aetna failed to adequately inform her of the type of evidence necessary to perfect her appeal." Id.

### III. Standard of Review

In ERISA cases, "where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir.2005)). In such a case, the non-moving party is not entitled

to the usual inferences in its favor. Id. Moreover, when an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits or construe the plan's terms, the district court must uphold the administrator's decision unless it is 'arbitrary, capricious, or an abuse of discretion.'" D & H Therapy Associates, LLC v. Boston Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir.2011) (quoting Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir.2004)). Accordingly, this Court does not weigh the proof independently, rather, it "must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002). Murphy, as the party claiming entitlement to the continuation of LTD benefits, bears the burden of showing that she remains disabled within the meaning of the Policy. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d at 518-519.

In considering objections to a Magistrate Judge's determination of a dispositive pretrial motion, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

11

**IV. Discussion**

The record, when viewed in its entirety, reveals that Murphy has made a remarkable, almost unexpected recovery after initially being hospitalized for acute liver failure and being considered for a liver transplant. Murphy still suffers from what appear to be related ailments, such as cirrhosis, renal insufficiency, pancreatitis and liver disease; she also underwent hip and shoulder replacement surgeries due to her osteoarthritis. Notwithstanding these serious health issues, Murphy's condition appears to have stabilized sufficiently for her to engage in a number of normal activities, such as parenting and engaging in regular exercise. At some point during her recovery, Murphy reported that she was quite active and that, although she still felt fatigued, she was bored and considered going back to work.

While some of Dr. Mis's periodic reports acknowledge Murphy's report of suffering from fatigue, other reports make no mention of it and there is nothing in the record to suggest that Murphy or her physicians attempted to ascertain the exact cause of her fatigue. Rather, Dr. Mis generally recommended that Murphy listen to her body and rest after being active.

After Aetna requested additional information from Murphy and her physician regarding her functional capacity in May 2014, Dr. Mis indicated that Murphy was able to perform sedentary work on a full time basis, without specifying any restrictions, "except for

12

what she can tolerate." AR 901. In a subsequent report, Dr. Mis notes that Murphy, although complaining from fatigue, has no new medical or surgical issues. The remainder of his report generally reflects that Murphy's health, while impacted by her previous alcoholism and related issues, has continued to remain stable and that "she remains single, her son continues to live with her, she smokes a pack of cigarettes per day, denies alcohol consumption, and she is on disability and now likely due to the severe fatigue." AR 837. Notably absent from this report is any indication that Dr. Mis has changed his opinion as to whether Murphy has the capacity to perform sedentary work as he previously indicated to Aetna.

Murphy's suggestion that Aetna's denial of her internal administrative appeal was largely based on the Functional Capacity Evaluation ("FCA") requested by Aetna finds no substantiation in the record, nor does the FCA contain manifest deficiencies that "destroyed its evidentiary value." Rather, the FCA was only one element in a rather extensive record and, as such, it was generally consistent with prior observations by Murphy's physician, which reflected, *inter alia*, an improvement in her overall health and in Murphy's reported activities, while acknowledging consistent self-reporting of fatigue. The FCA, administered after consultation with Dr. Mis, referenced chronic fatigue as part of the diagnosis provided to the occupational therapist ("OT") performing the FCA, AR 00578; it also notes that Murphy reported fatigue in undergoing some of the tests. AR 00579. Although the OT notes that obtaining

information during the testing process was "difficult" because of Murphy's "consistent subjective reporting of overall increasing total body pain and fatigue," the OT concluded that Murphy "demonstrated physical abilities at the SEDENTARY physical demand level." AR 00581.

As to Murphy's argument that Aetna failed to adequately inform her of the type of evidence necessary to perfect her appeal, this plaint cannot carry the day. Aetna's July 2, 2014 cancellation notice (AR 525-26) informed Murphy that Aetna would review "any additional information you care to submit, such as medical information from all physicians who have treated you for the condition(s)." This invitation was followed by a four-point descriptive list of items, including (1) a detailed narrative report, (2) diagnostic studies, (3) information specific to the condition(s) related to Murphy's disability, and (4) any other information or documentation that might assist Aetna in reviewing the case. It is undisputed, and the record reflects, that in response to this notification, Murphy submitted no new physical examinations or diagnostic test results; rather, her appeal was supported primarily by a letter describing, *inter alia*, aspects of her health and her disagreement with Dr. Mis's evaluation that she could return to a sedentary occupation on a full time basis. AR 00908-09. Dr. Mis's July 3, 2014 follow-up letter, written in connection with Murphy's appeal, offers no specific, fact-based support for her disability claims. Dr. Mis's general suggestion

14

that Murphy "cannot sustain a steady work environment" appears to be inconsistent with some of his earlier reports, as well as his assessment of Murphy's capacity for carrying out a sedentary occupation. At the same time, Dr. Mis advises Murphy to exercise and volunteer to "improve her quality of life." AR 00857.

When considering the record as a whole, the Court is of the opinion that Aetna's denial of LTD benefits to Murphy was supported by substantial evidence therein and that Murphy has not met her burden to establish that such denial was arbitrary and capricious. Accordingly, Murphy's objections to Aetna's denial cannot withstand Aetna's motion for summary judgment.

## Conclusion

For the reasons stated herein, the Court adopts the R&R in its entirety. Aetna's motion for summary judgment is GRANTED; and Murphy's motion for summary judgment is DENIED. The Clerk is directed to enter judgment in favor of Aetna.


SO ORDERED.

/s/ Mary M. Lisi
Senior United States District Judge

January 24, 2017